UNITED STATES DISTRICT COURT
**DISTRICT OF NEW JERSEY**
**(CAMDEN VICINAGE)**

**ROGER C. MATTSON, ESQUIRE**
**26 Newton Avenue**
**Woodbury, NJ 08096**
**(856) 848-4050**
**RM9791**
**Attorney for DOROTHY RHUE ALLEN**
**Plaintiff**

---

|  |  |  |
|---|---|---|
| **DOROTHY RHUE ALLEN, by her** : | | |
| **Attorney in fact James Martin** : | | |
| **Individually and as a class representative** : | | |
| **On behalf of others similarly situated** : | | |
| : | | |
| **Plaintiff** : | | |
| : | **CIVIL ACTION** | |
| **vs.** : | | |
| : | | |
| **LASALLE BANK, N.A.** : | **3:08-cv-2240-(AET)(JJH)** | |
| **CENLAR FEDERAL SAVINGS BANK** : | | |
| **FSB AND FEIN, SUCH, KAHN AND** : | | |
| **SHEPARD, PC** : | | |
| **AND JOHN DOE** : | | |
| **SERVICERS 1-100  AND JOHN DOE** : | | |
| **LAW FIRMS 1-100** : | | |
| **Defendants** : | | |

---

BRIEF OF PLAINTIFF IN OPPOSITION TO THE MOTION TO DISMISS BY THE
DEFENDANT LASALLE BANK

---

On the Brief

Lewis G. Adler, Esq.
Roger C. Mattson, Esq.

## Table of Contents

|  |  | **Page** |
|---|---|---|
| Facts |  | 2,3 |
| Legal Argument |  |  |
| I. | Standard for Determination of Motion | 3-4 |
| II. | Fein was LaSalle's agent | 4-5 |
| III. | Plaintiff incurred damages | 5 |
| IV. | National Bank Act does not preempt | 5-6 |
| V. | LaSalle violated Fair Debt Collection Practices Act | 6-7 |
| VI. | Plaintiff has plead cause of action for Breach of Contract | 7-8 |
| VII. | Plaintiff has plead cause of action for Negligence | 8-9 |
| VIII. | Plaintiff has plead cause of action for breach of duty of good faith and fair dealings | 9-10 |
| IX. | Plaintiff will dismiss Count IX for unjust enrichment | 11 |
| X. | Plaintiff has pled cause of action for breach of consumer fraud | 11 |
| XI. | Plaintiff has pled cause of action for violation of N.J. Fair Foreclosure Act | 11 |
| XII. | Plaintiff has pled cause of action for violation of N.J. Court Rules | 12 |
| XIII. | Plaintiff has pled cause of action or violation of N.J. Truth in Consumer Contract, Warranty Act | 12-16 |
| XIV. | Any dismissal should be without prejudice | 16 |
| XV. | Motion is premature | 17 |
| CONCLUSION |  | 17 |

## Table of Case Citations

**Page**

A&P Diversified Technologies Realty, Inc. Youngman v. Fleet Bank,
NA, 006 U.S. App. LEXIS 1179, No. 04-3622 (3rd Cir. 2006)  13

Alcoa Edgewater No. 1 Fed. Credit Union v. Carroll, 44 N.J. 442,
210 A.2d 68, 71 (N.J. 1965)  14

Alloway v. General Marine Industries, 149 NJ 620 (1997)  8

Amboy National Bank v. Ahmed, (Feb 7, 2007)  15

Ass'n Group Life, Inc. v. Catholic War Veterans of the U.S., 61 NJ 150,
153, (1972)  10

Bak-A-Lum Corp. v. Alcoa Bldg. Prods., Inc., 69 NJ 123, 129-30 (1976)  10

Beneficial National Bank v. Anderson, 123 S. Ct. 2058 (2003)  5

Coastal Bank v. Colonial Wood Products, Inc., 172 NJ Super 320
(App. Div. 1980)  13

Dawson v. Dovenmuehle Mortg., Inc., No. 00-6171, 2002 U.S. Dist.
LEXIS 5688, 2002 WL 501499, at *5 (E.D. Pa. Apr. 3, 2002)  6

Federal National Mortgage Association v. Bracer, 297 NJ Super 104
(Ch. Div. 1997)  4

In re: John Hatala, 295 BR 62 (2003)  13

Mardini v. Viking Freight, Inc., 92 F. Supp. 2d 378, 385 (D.N.J. 1999)  3

National City Mortgage v. Smith, 324 NJ Super 509 (Ch Div 1999)  14

NCP Litigation Trust v. KPMG, LLP., 187 NJ 353 (2004)  8

New Jersey Lawyers Diary 2007 pg 93  9

New Jersey Fair Foreclosure Act NJSA 2A:50-53  14

NJR 4:42-9 Notes                                                                        12

NJSA 2A:15-13                                                                            9

OCC Opinion Letter #1016 February 2005                                                  5

Onderdankm v. Presbyterian Homes of New Jersey, 85 NJ 171, 182 (1981)                  10

Pickett v. Lloyd's, 131 NJ 457, 467 (1993)                                             10

Regency Savings Bank, FSB v. Morristown Mews, 363 N.J. Super 363
(App. Div. 2003)                                                                      9, 13

R.J. Gaydos Insurance Agency, Inc. v. National Consumer Insurance Co.,
168 NJ 255, 276 (2001)                                                                  10

Shane v. Fauver, 213 F.3d 113 (3rd Cir 2000)                                        16

Stewart Title v. Lewis, 347 N.J. Super.127 (Ch. Div 2001)                              12, 13

Wozniak v. Pennella, 373 NJ Super 445 (App. Div. 2004)                                  11

**As the court is aware the Defendants LaSalle Bank and Cenlar have both filed motions to dismiss. The Plaintiff incorporates by reference its reply to the motion by Cenlar by reference in order to avoid duplication of arguments.**

## FACTS

The Statement of facts for purposes of this motion is outlined in the Plaintiff's complaint which is incorporated by reference herein.

The Plaintiff requested a payoff statement for the mortgage from Fein, Such, Kahn & Sheppard's (Fein) office since Fein initiated the foreclosure action in the name of the Defendant LaSalle Bank against the Plaintiff.

As a result of the Plaintiff's request to Fein, a payoff statement was provided (Exhibit A to Plaintiff's complaint). The payoff from Fein showed a caption of "Cenlar Federal Savings Bank". The payoff statement further provided that the money was to be paid to Cenlar Federal Savings in the amount of $3425.31. The amount of $2372.14 was to be paid to Fein listed as attorney's fees and costs of the foreclosure.

The Plaintiff filed an answer and counterclaim in the previous foreclosure action which was pending in the Chancery Court in Gloucester County New Jersey. The parties filed various dispositive motions. While the motions were pending in the foreclosure action, LaSalle Bank voluntarily dismissed with prejudice the foreclosure and discharged the Plaintiff's mortgage. The Court as a result entered an order which dismissed the foreclosure action with prejudice and discharged the mortgage. The court dismissed the Plaintiff's counterclaim without prejudice. The Plaintiff did not consent in anyway to the disposition of the Chancery Action and filed the within instant case.

2

The Plaintiff has suffered total damages of at least $7713.46. The Plaintiff's

damages are as follows:

a) Attorneys fees and costs of suit from successfully defending the foreclosure

   action $5,915.00 (see para 12 of the complaint);

b) Overcharges charged by the Defendants of at least $1798.46 calculated based on

   the following overcharges: $300 for the service of process; $60 for the filing and

   cancellation of the Lis Pendens; $543.89 for title and other search costs; $894.57

   for attorneys fees. (see para 83 of the complaint)


**I.    Standard for Determination of a motion under FR 12(b)(6).**


The Court in the case of Mardini v. Viking Freight, Inc., 92 F. Supp. 2d 378, 385

(D.N.J. 1999) articulated the standard the Court must use in a motion to dismiss under

Ruel 12(b)(6).

> Federal Rule of Civil Procedure 12(b)(6) authorizes a court to
> dismiss a claim on the basis of a dispositive issue of law. Neitzke v.
> Williams, 490 U.S. 319, 326, 104 L. Ed. 2d 338, 109 S. Ct. 1827 (1989)
> (citing Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104
> S. Ct. 2229 (1984)); Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80,
> 78 S. Ct. 99 (1957). In disposing of a motion to dismiss, the court must
> operate on the assumption that the factual allegations in the complaint or
> counterclaim are true. Neitzke, 490 U.S. at 326-27. A motion to dismiss
> may be granted if the opposing party would not be entitled to relief under
> any set of facts consistent with the allegations in the complaint or
> counterclaim. As the Supreme Court stated in Neitzke:
> "nothing in Rule 12(b)(6) confines its sweep to claims of law
> which are obviously insupportable. On the contrary, if as a matter of law
> "it is clear that no relief could be granted under any set of facts that could
> be proved consistent with the allegations," Hishon, supra at 73, 104 S. Ct.
> 2229, a claim must be dismissed, without regard to whether it is based on
> an outlandish legal theory or on a close but ultimately unavailing one.
> What Rule 12(b)(6) does not countenance are dismissals based on a

judge's disbelief of a complaint's factual allegations. (490 U.S. at 327)". Id at 381, 382

In the instant case, the Court must accept as true the allegations of the complaint.

## II.     Fein was LaSalle's agent during the course of the foreclosure litigation.

LaSalle argues that their attorneys were not their agent in the litigation. The

underlying foreclosure action was captioned "LaSalle Bank, NA. v. Allen". (See Exhibits

2  & 3 of LaSalles brief ;Plaintiffs original answer and counterclaim in the foreclosure  &

opinion of James Rafferty, Chancery Court Judge in the foreclosure respectively) It is

axiomatic that a principal is liable for the actions of its agent.

> [T]he principal is bound by the acts of his agent with the apparent
> authority which he knowingly permits the agent to assume, or which he
> holds the agent out to the public as possessing. The question in every
> case* * * is whether the principal has by his voluntary act placed the agent
> in such a situation that a person of ordinary prudence, conversant with
> business usages and the nature of the particular business, is justified in
> presuming that such agent has authority to perform the particular act in
> question;* * *. [ *Hudson & C., Loan Ass'n., Inc. v. Horowytz, 116 N.J.L.
> 605*, 608 (Sup. Ct. 1936)]

The court in the case *Federal National Mortgage Association v. Bracer*, 297 NJ

Super 104 (Ch. Div. 1997) took judicial notice that an attorney is acting as the agent of

the lender in a foreclosure under the Fair Foreclosure Act.

> The legislature could not have intended to abrogate agency principles.
> There is no dispute that plaintiff's attorneys are clearly plaintiff's agents
> for purposes of the foreclosure action and notice to the attorney is
> equivalent to notice to the lender. *Id* at 107.

As a matter of law, Fein was the agent of LaSalle Bank. The balance of LaSalle's

argument concerns the scope of the relationship between Fein and LaSalle. This is really

4

an issue of allocation of damages between Fein and LaSalle which does not preclude their liability to the Plaintiff. Further, these are factual issues still subject to discovery and should not be considered by the court at this time.  LaSalle's motion must be denied.

## III.    The Plaintiff incurred damages as a result of the actions of the Defendants.

This issue of the Plaintiff incurring damages has been extensively briefed in the Plaintiff's reply to Cenlar's motion. The Plaintiff would incorporate and rely upon those arguments herein in opposition to LaSalle's motion on the issue.

## IV.    The National Bank Act does not preempt the Plaintiff's claims.

The National Bank Act does not preempt the Plaintiff's claims. The OCC in its opinion letter #1016 February 2005 (A true copy of which is attached as Exhibit A to this brief) specifically rejected LaSalle's position. As in the instant case, the National Bank was proceeding with a foreclosure in which the borrowers had filed counterclaims against the Bank for violations of the New Jersey Consumer Fraud Act. The loan in question had been purchased from another lender. The Bank had not originated the loan. The Bank did not fund the loan at inception. The OCC concluded "For all these reasons, 12 USC 371 and 12 CFR 34.4(a) simply to do not apply to the transactions by which the Bank acquired legal title to the loans in the circumstances at issue here" *Id* at 3.

Ms. Allen's complaint is not subject to dismissal. The Supreme Court in Beneficial National Bank v. Anderson, 123 S.Ct. 2058 (2003) addressed the issue of a complaint which alleged a violation of "Alabama common law usury". Ms. Allen in the

within action seeks redress for specific statutory violations for the overcharging of fees and costs by the lender any claim of usury is incidental to the class.

If the court should find that the National Bank Act represents the exclusive remedy, the complaint should simply be amended to reflect this cause of action.

In the instant case the Plaintiff has more than suggested a cause of action against LaSalle, Fein and Cenlar.  The issue between the parties concerns whether LaSalle, Fein and Cenlar could legally collect these fees from Ms. Allen.   The essential facts and state laws remain the same. In fact to find a violation of the National Bank Act the Court must examine New Jersey law and find a violation thereof first.

### V.    LaSalle has violated the Fair Debt Collection Practices Act.

LaSalle Bank has violated the Fair Debt Collection Practices Act. LaSalle argues that it is not a debt collector. LaSalle argues that it can not be a debt collector as it is collecting its own debt. The argument is legally flawed. The term "debt collector" does not include a mortgage servicing company unless the mortgage was already in default at the time when the servicing began. *Dawson v. Dovenmuehle Mortg., Inc.,* No. 00-6171, 2002 U.S. Dist. LEXIS 5688, 2002 WL 501499, at *5 (E.D. Pa. Apr. 3, 2002) and *Whittingham II.* The statutory definition under the Act provides that the collecting one's own debt is exempt only if the loan was not in default at the time of purchase. See 15 USC 1692a(f)(iii).

LaSalle further argues that the Plaintiff has no proof that LaSalle regularly engages in collecting debt. This is a motion to dismiss the pleadings and as such the court must accept as true the allegations of the complaint. LaSalle has offered no contrary proof concerning its activities. The actual scope of LaSalle's activities is a subject of discovery.

6

Finally LaSalle argues again that the assignment was void ab initio therefore no liability can be assigned. Assuming this is true does not absolve LaSalle of its collection practices taken while it acted as though the assignment were valid. Rather if LaSalle was not the "true" owner of the loan, then the actions taken by LaSalle become a greater violation of the act as LaSalle sought to foreclose and collect on a loan in which it had no admitted legal interest. The court instead should view this as nothing as a shallow and vain attempt to avoid responsibility by the Defendant for its illegal activities.

As a matter of law, LaSalle's motion to dismiss this count must be denied.

## VI. The Plaintiff has pled a cause of action for breach of contract by LaSalle.

LaSalle argues that count III of the complaint should be dismissed as the Plaintiff has failed to allege that LaSalle has a contractual relationship with the Plaintiff. The assertion is completely without merit. First, the complaint states at para.11 that "On or about June 12, 2007 LaSalle took assignment of the mortgage".

Second, the foreclosure complaint (Exhibits 2 & 3) was filed in the name of LaSalle Bank, NA.. For purposes of this motion the court must view the evidence to support the contractual relationship.

Third, how and when LaSalle took the assignment or canceled the assignment ab initio is still subject to discovery. The Plaintiff has filed a request pursuant to Rule 56(f) for the motion to be stayed pending discovery.

Fourth, as to the issue of damages by the Plaintiff, her previous arguments should be considered herein.

7

Finally, the appropriate relief would not be to dismiss the counts but to allow the Plaintiff to file an amended pleading. As a matter of law, LaSalle's motion to dismiss count III should be denied.

**VII.    The Plaintiff has pled a cause of action for negligence by LaSalle.**

LaSalle argues that Ms. Allen can not maintain a cause of action for negligence and contract. LaSalle has argued that the courts "have consistently held that tort claims are barred as a matter of law where a contract between the parties exists, and where the plaintiff's alleged damages are limited to economic loss springing from that contract." The statement is a complete misrepresentation of the law. The cases relied on by LaSalle and specifically the case Alloway v. General Marine Industries, 149 NJ 620 (1997) are concerned only with product liability cases where the damage is limited to the product itself. Id. at 635. The Court specifically declined to go any further.

> An unresolved issue is whether the U.C.C. or tort law should apply when a defective product poses a serious risk to other property or persons, but has caused only economic loss to the product itself. In the present case, plaintiffs have not alleged that the defective seam in the boat posed such a risk. Hence, we do not resolve the issue. Id at 638.

The instant case is more than about the loan. The impact to Ms. Allen concerns her credit worthiness, the emotional upset from the Defendant's egregious actions and possible loss of her home in the foreclosure in addition to any contract damages.

The New Jersey Supreme Court addressed a similar issue in the case of NCP Litigation Trust v. KPMG, LLP., 187 NJ 353 (2004). This was a case concerning

accounting irregularities. The complaint alleged causes of action for breach of

contract, and negligence among others against the accountants, KPMG.. The court

allowed the case to go forward on both theories. As the court noted:

> At the outset, we observe that this matter is before us on a *Rule* 4:6-2(e)
> motion to dismiss. On such motions, a trial court should grant a dismissal
> "in only the rarest of instances." *Printing Mart-Morristown v. Sharp Elecs.
> Corp.*, 116 N.J. 739, 772, 563 A.2d 31 (1989) . A court's review of a
> complaint is to be "undertaken with a generous and hospitable approach,"
> *id.* at 746, 563 A.2d 31 , and the court should assume that the nonmovant's
> allegations are true and give that party the benefit of all reasonable
> inferences, *Smith v. SBC Communications Inc.*, 178 N.J. 265, 282, 839
> A.2d 850 (2004) . If "the fundament of a cause of action may be gleaned
> even from an obscure statement of claim," then the complaint should
> survive this preliminary stage. *Craig v. Suburban Cablevision, Inc.*, 140
> N.J. 623, 626, 660 A.2d 505 (1995) (citation omitted).

As a matter of law LaSalle's motion to dismiss count IV must be denied.

## VIII.  The Plaintiff has pled a cause of action for breach of the duty of good faith and fair dealing  by LaSalle.

LaSalle argues that the Plaintiff has failed to adequately plead an action for the breach

of the contractual duty of good faith and fair dealing. The argument is flawed on several

levels. First, the Plaintiff's cause of action is based on primarily fraudulent charges.  For

example the charge of $160 for the filing and release of the Lis Pendens is $60 greater

than the actual charge. *NJSA 2A:15-13;* See also New Jersey Lawyers Diary 2007 pg 93.

Second, the mortgage provides that the attorney's fees are to be "reasonable."

The courts have held that "reasonable attorney's fee" in a foreclosure are limited by

R.4:42-9(a)4). In *Regency Savings Bank, FSB v. Morristown Mews*, 363 N.J. Super. 363

(App.Div. 2003) held: "In sum, we are in agreement with the motion judge that lender's

fee shifting provisions on the secured notes, must be viewed in the context of R.4:42-

9(a)(4). "

In the instant case, the Defendant has sought attorney's fee in excess of the amount allowed under the rule.

"Every contract in New Jersey contains an implied covenant of good faith and fair dealing." *R.J. Gaydos Insurance Agency, Inc. v. National Consumer Insurance Co.*, 168 NJ 255, 276 (2001). See *Pickett v. Lloyd's*, 131 NJ 457, 467 (1993); *Onderdankm v. Presbyterian Homes of New Jersey*, 85 NJ 171, 182 (1981); *Bak-A-Lum Corp. v. Alcoa Bldg. Prods., Inc*, 69 NJ 123, 129-30 (1976). This covenant requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Ass'n Group Life, Inc. v. Catholic War Veterans of the U.S*, 61 NJ 150, 153 (1972).

> "The standard of conduct contemplated by the unconscionability clause is 'good faith, honesty in fact and observance in fair dealing' and the need for application of that standard 'is most acute when the professional seller is seeking the trade of those most subject to exploitation, the uneducated, the inexperienced and the people of low incomes.'" *Associates* at 278.

In the instant case, the Defendant seeks funds to which they were not otherwise entitled. It is axiomatic that to seek money to which they are not legally entitled is a violation of the covenant of good faith and fair dealing. See *Whittingham I*

As a matter of law LaSalle's motion to dismiss count V must be denied and judgment entered.

10

IX.     **The Plaintiff will dismiss Count IX the cause of action for unjust enrichment by LaSalle without prejudice.**

As no additional monies changed hands the Plaintiff would consent to the dismissal of Count IX without prejudice.


X.      **The Plaintiff has pled a cause of action for breach of New Jersey Consumer Fraud Act by LaSalle.**

This issue of the Plaintiff's cause of action under the New Jersey Consumer Fraud Act  has been extensively briefed in the Plaintiff's reply to Cenlar's motion. The Plaintiff would incorporate and rely upon those arguments herein in opposition to LaSalle's motion on the issue.

As to the issue concerning count VII violations of the Federal Trade Commission Act ( FTCA ), the New Jersey Consumer Fraud Act provides the private enforcement mechanism for the act. See *Wozniak v. Pennella*, 373 NJ Super 445 (App. Div. 2004).As a matter of law,  LaSalle's motion to dismiss counts VII and X must be denied.


XI.     **The Plaintiff has pled a cause of action for violation of the New Jersey Fair Foreclosure Act by LaSalle.**

This issue of the Plaintiff's cause of action under the Fair Foreclosure Act has been extensively briefed in the Plaintiff's reply to Cenlar's motion. The Plaintiff would incorporate and rely upon those arguments herein in opposition to LaSalle's motion on the issue.

**XII.    The Plaintiff has pled a cause of action for violation of the New Jersey Court Rules by LaSalle.**

This issue of the Plaintiff's cause of action under the New Jersey Court rules has been extensively briefed in the Plaintiff's reply to Cenlar's motion. The Plaintiff would incorporate and rely upon those arguments herein in opposition to LaSalle's motion on the issue.

**XIII.    The Plaintiff has pled a cause of action for violation of the New Jersey Truth In Consumer Contract, Warranty and Notice Act by LaSalle.**

This issue of the Plaintiff's cause of action under the New Jersey Truth In Consumer Contract, Warranty and Notice Act has been extensively briefed in the Plaintiff's reply to Cenlar's motion. The Plaintiff would incorporate and rely upon those arguments herein in opposition to LaSalle's motion on the issue.

LaSalle argues that there can be no violation as the note was signed in 1976 prior to the passage of the Act. However this ignores the fact that the violation occurred in 2007 when LaSalle attempted to collect monies in the foreclosure to which it was not legally entitled. The consumer right limiting attorney's fees in a foreclosure action is one of long standing. The court should be aware that the court rule regulating attorney's fees in a foreclosure was in existence since 1902. See notes to *NJ R 4:42-9*. As the court noted in the case of *Stewart Title v. Lewis*, 347 N.J. Super.127 (Ch. Div 2001):

> The first such court rule, adopted in 1902, was based upon a formula similar to the present-day rule. *See, Shreve v. Harvey,* 74 N.J. Eq. 336, 351, 70 A. 671 (Ch.1908). Subsequent incarnations reveal little change up until the present other than modest increases in the percentages. *Id* at 133.

The regulation of counsel fees in a foreclosure was in place at the time the loan was entered into. This has been a clearly established right in New Jersey for over 100 years.

12

The limitations of this rule are absolute. The Courts have held that where a mortgage debt is secured by a note providing for an attorney's fee for collection and the mortgagee proceeds to foreclosure the mortgage his attorney's fees are governed by the rule rather than the note. *Coastal Bank v. Colonial Wood Products, Inc.,* 172 NJ Super 320 (App. Div. 1980) An attorney fee provision in a promissory note accompanying a mortgage will not be construed to include fees for post-judgment collection costs. *Regency Savings v. Morristown Mews,* 363 NJ Super. 363 (App. Div. 2003). The courts have also included the fees incurred in a bankruptcy proceeding during the pendency of the foreclosure as being included in this cap. *In re: A&P Diversified Technologies Realty, Inc, Youngman v. Fleet Bank, NA*, 006 U.S. App. LEXIS 1179, No. 04-3622 (3rd Cir. 2006); *Stewart Title Guar. Co. v. Lewis,* 347 NJ Super. 127 (Ch Div 2001); *In re: John Hatala*, 295 BR 62 (2003).

The Third Circuit case of *In re: A&P Diversified Technologies Realty, Inc, Youngman v. Fleet Bank, NA*, 006 U.S. App. LEXIS 1179, No. 04-3622 (3rd Cir. 2006) is directly on point. In *A&P,* the Court held:

> We also disagree with Fleet's assertion that New Jersey's limitation on attorneys' fees in Rule 4:42-9(a)(4) somehow renders the merger doctrine inapplicable and allows creditors to recover attorneys' fees post-judgment. In this regard Fleet contends that cases from other jurisdictions which hold "that a secured party cannot receive a section 506(b) award after its mortgage is satisfied are inappropriate and emanate from jurisdictions outside New Jersey where unlike New Jersey, a party may seek all of its legal fees and costs in the context of a state court foreclosure action." Appellee's Br. at 19. Rule 4:42-9(a)(4) does not render the merger doctrine inapplicable; nor does it allow a mortgage agreement to survive a judgment of foreclosure. Indeed, it does not even address these matters. Rather, it limits the award of attorneys' fees allowable under state law as it provides, after setting forth the allowable fees, that "in no case shall the fee allowance exceed the limitations of this rule." The Supreme Court of New Jersey has made it clear that the parties to a mortgage cannot by

13

contract override the limitations of the rule. *Alcoa Edgewater No. 1 Fed. Credit Union v. Carroll*, 44 N.J. 442, 210 A.2d 68, 71 (N.J. 1965).

In reaching our result we emphasize the following. While it is true that the debtor agreed to pay Fleet's "reasonable" attorneys' fees in a foreclosure action and arguably waived the benefit of certain laws limiting the amount of fees Fleet could recover, certainly in the absence of a bankruptcy proceeding these provisions would not have rendered the limitations of Rule 4:42-9(a)(4) ineffective. Id. Furthermore, we point out that inasmuch as mortgagees ordinarily prepare the mortgage documents, if such provisions superceded Rule 4:42-9(a)(4) in foreclosure actions, the rule soon would become meaningless.

The question, then, is whether section 506(b) should require a different result in a bankruptcy context. We do not see why it should in the absence of clear language in the loan documents preserving the claim for attorneys' fees after a foreclosure judgment. In this regard we observe that the debtor's waiver in the mortgage of the "benefit" of certain laws hardly can assist Fleet with respect to section 506(b) as that section in allowing a creditor to obtain attorneys' fees in excess of those it otherwise could recover surely is not a law enacted for the benefit of a mortgagor. Thus, Fleet, is limited to recovering its "reasonable" attorneys' fees, which were determined through the application of the state court rule in the state court proceedings, as the mortgage or other documents simply do not provide that the provision for reasonable fees in the mortgage renders inapplicable the ordinary application of the merger doctrine. *Id* at ___.

The rule applies to all fees incurred by the mortgagee during the pendency of the foreclosure. The result is the same in cases where the mortgage is cured or paid off prior to the entry of the final judgment. *National City Mortgage v. Smith,* 324 NJ Super 509 (Ch Div 1999). The *New Jersey Fair Foreclosure Act NJSA 2A:50-53* provides that in the event of a default the amount of attorneys fees and costs to be charged to the borrower to cure the default are limited by the court rule. *NJSA 2a:50-57* states:

> (3) pay or tender court costs, if any, and attorneys' fees in an amount which shall not exceed the amount permitted under the Rules Governing the Courts of the State of New Jersey;

14

The unpublished Appellate Division decision of *Amboy National Bank v. Ahmed,* (Feb 7, 2007) concerned the calculation of attorneys fees due the lender in a deficiency action following a foreclosure including the enforcement of a forbearance agreement. In *Amboy* , the Bank was seeking additional attorney's fees as a result of the violation of the borrowers of a forbearance agreement entered into by the parties. The court concluded that the court rules limiting attorneys fees are absolute and apply to any related action. "It is well settled that the limit in the calculation of attorney's fees in mortgage foreclosure actions contained in Rule 4:42-9(a)(4) is mandatory and the trial court has no discretion to depart from its strict application by increasing the attorney's fees award beyond the calculated amount. Furthermore, with respect to multiple sources allowing an attorney's fee, if a mortgage debt is secured by a note providing for an attorney's fee for collection and the mortgagee proceeds to foreclose the mortgage, his attorney's fess are governed by this rule rather than by the note stipulation." Id at 6 The case reaffirms the underlying legal principle of the instant case. The court rule provides a strict cap on the amount of attorney's fees a lender may charge a borrower in connection with a foreclosure action.

The law in New Jersey is clear. The Court rules are an absolute cap to the amount a lender can charge to the borrower for attorney's fees and costs in a defaulting mortgage. The Court rule is clear "**in no case shall the fee allowance exceed the limitation of this rule**". R 4:42-9(a)(4)      The fact that the cause of action did not accrue until today is the real issue. Further, as noted in the

15

Plaintiff's reply to Cenlar the payoff letter itself forms a separate basis for the

violation of the act.

As a matter of law, LaSalle's motion to dismiss count XI should be

dismissed.

## XIV. Any dismissal by the Court should be without prejudice and the Plaintiff given an opportunity to file an amended complaint.

In the event, the court should hold that any of the Plaintiff's pleadings are defective,

the court should allow the Plaintiff an opportunity to file an amended complaint. The

Third Circuit held *Shane v. Fauver*, 213 F.3d 113 (3rd Cir 2000) the standard to be used to

dismiss a complaint with prejudice.

> The District Court in this case dismissed the plaintiffs' claims with
> prejudice and without leave to amend. In doing so, the court may have
> understandably thought that this procedure was mandated by the PLRA.
> We hold, however, that it is not and that now, as before, in the situation
> presented here, dismissal without leave to amend is justified only on the
> grounds of bad faith, undue delay, prejudice, or futility. The District Court
> did not test the plaintiffs' various claims against this standard, and we
> therefore vacate the order dismissing those claims and remand for the
> District Court to rule in the first instance on whether this standard is met.

In the instant case, neither LaSalle or Cenlar have presented any evidence

of bad faith, undue delay, prejudice or futility. Many of the issues raised by the

Plaintiff's complaint are areas of law which have not been subject to much

litigation. There is no question that the Defendants are on notice on the causes of

actions being litigated. The State Court Judge offered little to no guidance as to

any deficiencies in the pleadings only that they were confusing. In the event the

16

court finds any of the pleadings in the complaint deficient, the Plaintiff should be allowed to file an amended complaint.

**XV.    The motion is premature as discovery has not been completed.**

LaSalle and Cenlar have filed the within motion while discovery is still pending. Many key facts still have not been developed. This is especially true of an itemization of the attorneys fees and court costs charged to Ms. Allen. This information is in the sole possession of the LaSalle Cenlar and Fein. Without those figures it is difficult to give exact calculations of the extent of the violations of the act or Ms. Allen's damages. To this end the Plaintiff has filed a certification pursuant to R56(f) requesting the decision on those issues be stayed pending the completion of discovery.

### CONCLUSION

In the instant case the Plaintiff has more than suggested a cause of action against LaSalle, Fein and Cenlar. The issue between the parties concerns whether LaSalle, Fein and Cenlar could legally collect these fees from Ms. Allen. As a matter of law, the motion to dismiss must be denied or in the alternative, the Plaintiff should be given an opportunity to file an amended pleading.

Respectfully submitted,

/s/ Lewis G. Adler, Esquire
Lewis G. Adler, Esquire

/s/ Roger C. Mattson, Esquire
Roger C. Mattson, Esquire

# EXHIBIT A



Comptroller of the Currency
Administrator of National Banks

Washington, DC 20219

**Interpretive Letter #1016**
**February 2005**
**12 CFR 34.4**

VIA FIRST CLASS MAIL

January 14, 2005
Anthony J. Sylvester
Riker, Danzig, Scherer, Hyland & Perretti, LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981

Madeline L. Houston
Houston & Totaro
56 Broad Street, Suite 1
Bloomfield, N.J. 07003

Subject:     Wells Fargo Bank, Minnesota, N.A. v. Alberta Harris, et al.
             Docket No. ESX-L-4676-02

                    and

             Bank One National Association v. Feinstein
             Docket No. F-11450-00

Dear Mr. Sylvester and Ms. Houston:

This letter is in response to your letter dated December 13, 2004, seeking the views of the Office of the Comptroller of the Currency ("OCC") concerning preemption of certain state laws in connection with claims and defenses asserted by the parties in the above-named cases. You requested the OCC's views at the direction of the Honorable Kenneth S. Levy, J.S.C., presiding judge in this litigation. For the reasons stated below, based on the facts presented in the materials provided to us, we believe that neither 12 C.F.R. § 34.4 nor the National Bank Act preempts application of the state laws at issue here to loans simply because they were purchased and held by national banks acting as trustees in connection with issuance of the mortgage-backed securities involved in this case.

**Background**

According to the materials provided with the December 13th letter addressed to me, Delta Funding made a mortgage loan to Alberta Harris in December 1999 (Wells Fargo Complaint,

First Count ¶1), and subsequently assigned the mortgage to Wells Fargo "as Trustee for Delta Funding Home Equity Loan Trust 2000-1" (Wells Fargo Complaint, First Count ¶4). Delta Funding made a mortgage loan to Dequilla Robinson in November 1999 (Bank One Statement of Material Facts Not in Dispute ¶3), and subsequently assigned the mortgage to Bank One National Association "as Trustee in Trust for the Registered Holders of Delta Funding Home Equity Loan Asset-Backed Certificates Series 1999-3" (Certification of Harold L. Kofman, Esq. ¶¶1, 3). There is no indication that either Wells Fargo or Bank One made the original mortgage loans to Alberta Harris or Dequilla Robinson, nor does any party assert that Wells Fargo or Bank One has any other interest in these transactions except as trustees for investors in the mortgage-backed securities.

As trustee acting on behalf of the investors in Home Equity Loan Trust 2000-1, Wells Fargo filed suit against Ms. Harris alleging that she had defaulted on the loan made by Delta and sought to foreclose on the real estate she had pledged as collateral for that loan (Wells Fargo Complaint, First Count ¶¶1-14). As trustee acting on behalf of the investors in Delta Asset-Backed Certificates Series 1999-3, Bank One filed suit against Jack Feinstein, as Administrator *Ad Prosequendum* for the estate of Ms. Robinson, seeking to foreclose on the real estate she had pledged as collateral for the loan made by Delta (Memorandum of Law in Support of Plaintiff Bank One National Association's Motion for Summary Judgment at 3-4). Ms. Harris and Mr. Feinstein ("Defendants"), through counsel, opposed the foreclosure actions. They alleged in counterclaims against the Banks (and third-party claims against Delta and others) defenses based upon alleged violations of the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56.8-2, which, among other things, proscribes unconscionable practices in real estate transactions. N.J.S.A. 56.8-2. *See* Defendant's Brief in Opposition to Plaintiff Wells Fargo's Motion for Partial Summary Judgment at 3; Defendant's Brief in Opposition to Plaintiff Bank One's Motion for Summary Judgment at 4. Asserting that federal law authorizing national banks to make and purchase real estate loans preempted the Defendants' state law defenses under the CFA, Wells Fargo and Bank One, as trustees acting on behalf of the investors, sought partial summary judgment on the cross-claims.

**Discussion**

Pursuant to 12 U.S.C. § 371, national banks may "make, arrange, purchase or sell loans or extensions of credit secured by liens on interests in real estate, subject to * * * such restrictions and requirements as the Comptroller of the Currency may prescribe by regulation or order." The OCC's real estate lending regulations provide that, "[e]xcept where made applicable by Federal law, state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers do not apply to national banks." 12 C.F.R. § 34.4(a).

The Banks assert that application of the CFA is preempted because it would interfere with their power as national banks to purchase loans as authorized under 12 U.S.C. § 371, and that holding them liable for violations of the CFA as loan purchasers would be contrary to 12 C.F.R. § 34.4(a), which preempts state laws that interfere with national bank real estate lending authority.

-2-

Section 34.4(a)(10) states that national banks "may **make** real estate loans under 12 U.S.C. § 371 without regard to state law limitations concerning * * * [p]rocessing, origination, servicing, **sale or purchase of**, or investment or participation in, mortgages." 12 C.F.R.§ 34.4(a)(10) (emphasis added). However, in no sense, under the facts presented, can the Banks be viewed as *making* a real estate loan under 12 U.S.C. § 371 and 12 C.F.R. § 34.4. The Banks did not originate the loans. They did not fund the loans at inception. Nor did they "purchase" the loans as part of any real estate lending program comprehended by the regulation. Here, the Banks act as trustees for the benefit of investors in the trusts. The substance of the transaction is that the investors, not the Banks, are purchasing the loans that have been made by Delta. The investors own the beneficial interest in the loans held by the Banks as trustees. And the effect of any liability for violation of the CFA ultimately falls on the investors. Nowhere do the Banks allege that they themselves, as opposed to the trusts they represent, are exposed to liability for any violation of the CFA. For all these reasons, 12 U.S.C. § 371 and 12 C.F.R. § 34.4(a) simply do not apply to the transactions by which the Banks acquired legal title to the loans in the circumstances at issue here.

With respect to the activities of Wells Fargo and Bank One as trustees, the banks derive their power to act as trustees from 12 U.S.C. § 92a. When state law conflicts with national banks exercising powers granted to them by federal law, the Supremacy Clause of the United States Constitution requires that the state law yield to the paramount authority of federal law, with the result that application of the state law to national banks is preempted. The Supreme Court has explained this principle stating that it interprets "grants of both enumerated and incidental 'powers' to national banks as grants of authority not normally limited by, but rather ordinarily pre-empting, contrary state law." *Barnett Bank of Marion County v. Nelson*, 517 U.S. 25, 32 (1996).

As the Supreme Court demonstrated in its review of preemption cases in the *Barnett* case, Supremacy Clause principles animating conflict preemption have been expressed in a wide variety of phrases that do not yield materially different meanings, including "stand as an obstacle to," "impair the efficiency of," "significantly interfere," "interfere," "infringe," and "hamper." *See Barnett*, 517 U.S. at 33. Thus, if application of the CFA to the loans held by the Banks as trustee were to obstruct, impair, condition, or otherwise interfere with the Banks' exercise of fiduciary powers granted to them under federal law, the state statute would be preempted.

Based on the facts presented, we do not believe that to be the case. The Banks have not claimed that application of the CFA would impair their ability to act as trustee in these circumstances or that the state law otherwise interferes with the performance of their legal obligations as trustee. Nor could they claim that having to respond to state law defenses to recovery on assets held in trust obstructs or impairs their power to act as trustee absent some indication that the state law infringes their authority, conditions their actions, or imposes a burden in a way prohibited by federal law. In short, the Banks' authority to act as trustees under federal law does not insulate the assets the Banks hold in trust for the benefit of investors from state law requirements otherwise applicable to those assets.

We trust that the foregoing is responsive to your request.

Sincerely,

/s/ *Daniel P. Stipano*

Daniel P. Stipano
Acting Chief Counsel

Cc:    Hon. Kenneth S. Levy, J.S.C.
212 Washington Street
The Wilentz Justice Complex
General Equity, 8th Floor
Newark, New Jersey 07102

-4-

# EXHIBIT B

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4690-05T5

AMBOY NATIONAL BANK,

Plaintiff-Appellant,

v.

ZAHOOR AHMED AND IFFAT AHMED,

Defendants-Respondents.

---

Submitted January 9, 2007 - Decided February 7, 2007

Before Judges Lisa and Holston, Jr.

On appeal from Superior Court of New Jersey,
Law Division, Mercer County, Docket No. L-
3051-05.

Hill Wallack, attorneys for appellant
(Meridith F.M. Mason, of counsel and on the
brief).

Cohn, Bracaglia & Gropper, attorneys for
respondent (John F. Bracaglia, Jr., of
counsel and on the brief).

PER CURIAM

Plaintiff, Amboy National Bank, appeals the Law Division's
April 12, 2006 order granting summary judgment in favor of
defendants, Zahoor Ahmed and Iffat Ahmed, dismissing plaintiff's
complaint with prejudice. We affirm.

On April 9, 2002, Iffe, Inc. (Iffe), a corporation owned by defendants, entered into a revolving line of credit loan agreement with plaintiff in the principal amount of $100,000. On the same date, Iffe executed a revolving credit note to plaintiff in the principal amount of $100,000. On April 9, 1999, the defendants executed and delivered a guaranty to plaintiff, wherein they guaranteed all amounts due to plaintiff by Iffe under the note. In order to secure their obligation to plaintiff under the guaranty, defendants executed and delivered a mortgage to plaintiff on commercial real estate (the property) owned by them at 10 Race Street in North Plainfield, which mortgage was recorded on April 16, 1999.

Iffe defaulted under the loan agreement and note by failing to pay the amount due and owing under the note by April 9, 2003. Defendants also failed to make payment to plaintiff under the guaranty. On July 16, 2003, default judgment was entered against defendants for $85,182.30 plus interest in a Law Division action instituted by plaintiff against Iffe and defendants. Plaintiff also commenced a foreclosure action against the property on May 13, 2003, in the Chancery Division, Somerset County. On March 12, 2004, a final judgment of foreclosure was entered in the foreclosure action and plaintiff was able to schedule the property for sheriff's sale. The March 12, 2004 final judgment was in the amount of $86,785.54,

2

together with interest to be computed at the legal rate from February 28, 2004 and with costs to be taxed, which included a counsel fee of $1,017.86, to be paid out of the mortgaged premises.

Subsequent to the final judgment and before sheriff's sale, the parties negotiated a forbearance agreement by which, in consideration of defendants making a schedule of payments on the final judgment to plaintiff, plaintiff agreed to forbear from proceeding with the sheriff's sale until after March 1, 2005, to give defendants an opportunity to sell the property privately. After defendants realized that they would not be able to sell the property before the forbearance agreement's March 1, 2005 deadline, after further negotiations, plaintiff agreed by a second forbearance agreement dated February 10, 2005, to extend the forbearance period until June 30, 2005, conditioned on defendants making certain monthly payments. The second forbearance agreement also provided that in the event the property was sold, plaintiff was to be paid in full from that sale.

Defendants failed to sell or refinance the property prior to the June 30, 2005 deadline. As a result, plaintiff applied to the Chancery Division for permission to sell the property at sheriff's sale. The court thereafter granted defendant's application to adjourn the sheriff's sale for two weeks. As a

3                                                    A-4690-05T5

result of obtaining a buyer for the property, defendants then filed a motion to fix the amount of the foreclosure judgment. Defendants claimed that they owed $10,615.89 as of July 31, 2005. Plaintiff cross-moved to amend the foreclosure judgment to include an award of attorney fees and costs plus post-judgment interest at the note rate. The motions were decided by Judge Williams in her oral opinion of September 23, 2005, which was memorialized in the Chancery Division order of the same date, which in applicable part ordered that:

> (a) Plaintiff must submit to this court within five (5) days upon receipt of this Order a detailed payment schedule for the defendants calculated at the judgment interest rate;
>
> (b) Plaintiff's cross-motion for attorney's fees and costs associated with this foreclosure action incurred after entering into the second forbearance agreement with Defendants to be "paid in full" is hereby Granted as to liability;
>
> (c) Plaintiff must submit to this court a proper affidavit of services under Rule 4:42-9(b) within five (5) days upon receipt of this Order so this court may assess the amount of attorney's fees and costs to award Plaintiff;
>
> (d) Plaintiff's motion for attorney's fees and costs associated with any Law Division claims is hereby Denied without prejudice and [Plaintiff] may make the appropriate motion in the Law Division;
>
> . . . .

On September 29, 2005, plaintiff's counsel provided a certification, which had attached thereto a series of billing statements itemizing the legal services and costs that counsel provided to plaintiff from February 10, 2005 through September 28, 2005, which totaled $8,563.70.

Thereafter, on October 3, 2005, Judge Williams entered an order amending final judgment, which stated:

> [T]he Court having determined, without limitation, that interest shall accrue on the Final Judgment at the rates set forth in Rule 4:42-11(a) and that the Final Judgment shall include the attorneys fees and costs incurred by Plaintiff associated with this action after February 10, 2005; and for good and other cause shown:
>
> It IS on this 3rd day of October, 2005, ORDERED:
>
> 1.  The amount due under the Final Judgment is herby fixed at $14,744.45 as of September 30, 2005.
> 2.  Interest on the amount set forth in paragraph 1, shall continue to accrue at the rates set forth in Rule 4:42-11(a).

On November 8, 2005, the property was sold. After the sale, based on the October 3, 2005 order, three checks were delivered to plaintiff on behalf of defendants as follows: (a) $14,756.56 in payment of the final judgment in full with accrued interest; (b) $295.13 for sheriff's commissions in the

foreclosure; and (c) $19,948.30 made payable to "Hill Wallack, Attorney Trust Account."[1]

On November 15, 2005, plaintiff filed a new Law Division action against defendants. Plaintiff's complaint sought damages for breach of the forbearance agreement of February 10, 2005 in the amount of $22,691.20. The complaint alleges that the defendants' failure to pay all amounts due and owing under the note, including attorney's fees and costs, constitutes a breach of the forbearance agreement.[2]

On December 30, 2005, defendants filed their answer denying the allegations of plaintiff's complaint. Defendants thereafter filed a motion for summary judgment contending that they had paid plaintiff all sums to which plaintiff was due and that plaintiff's complaint should be dismissed because it was a duplicate of the earlier Law Division complaint, which resulted in the July 16, 2003 default judgment, which it had satisfied in full by its payment of the October 3, 2005 order amending the final judgment of foreclosure. Defendant argued that the complaint seeks to recover the same attorney's fees and costs, which were the subject of plaintiff's cross-motion for

---

[1] The Law Division's April 12, 2006 order requires the immediate return to defendants of the $19,948.30 with any accrued interest being held in escrow by plaintiff.

[2] Plaintiff's complaint avers that the sum of $22,691.20 claimed to be due under the forbearance agreement continues to accrue interest per diem.

A-4690-05T5

attorney's fees and costs determined by Judge Williams' order of
October 3, 2005.

Plaintiff cross-moved for summary judgment contending that
through January 11, 2006, $22,237.01 continued to be owed
plaintiff under the note and mortgage. Plaintiff asserted that
amount consisted of $12,818.83 in principal, $150.76 in
interest, late charges of $202.99, and escrow of $9,064.43. The
escrow was comprised of attorney's fees and costs incurred and
paid by plaintiff in the amount of $7,964.43 plus $1,100 in
sheriff's deposits related to the foreclosure. Further,
plaintiff claimed it was due unpaid attorney's fees and costs
through January 10, 2006 in the amount of $3,763.92. Thus,
plaintiff requested entry of summary judgment in the total
amount of $26,000.93 through January 11, 2006, plus per diem
interest thereafter until the judgment is satisfied in full.

During the three days of oral argument on defendant's
motion and plaintiff's cross-motion for summary judgment,
defendant's attorney pointed out that plaintiff had filed a
cross-motion in the foreclosure action before Judge Williams in
which it sought attorney fees, interest and costs, which in
addition to principal and accrued interest, it claimed totaled
$31,000. Defendant argued that Judge Williams made a
determination that $14,744.45 was the sum due and owing and that

7                          A-4690-05T5

the sum included attorney's fees and costs awarded by her.

Judge Mathesius agreed and concluded:

> All of this comes down to the interpretation
> of the order to which I referred drawn again
> by [Plaintiff's attorney] and signed by
> Judge Williams. . . . I determine, I find
> that the only conclusion that can be drawn
> from the order amending final judgment of
> Judge Williams is that phraseology after
> relying upon the papers and the arguments,
> and the Court determines without limitation
> that interest shall accrue . . . and that
> the final judgment shall include the
> attorney's fees and costs incurred by
> [Plaintiff] associated with this action
> after February 20, 2005 and for good cause
> and other cause shown that amount ultimately
> is determined to be $14,744.45 ultimately
> resolving the final judgment of that amount.
> And I find that there are no fees and
> attorney's fees and costs due after that
> date on this judgment.

Plaintiff presents the following arguments for our

consideration:

> POINT I.
> THE TRIAL COURT'S DECISION WAS INCONSISTENT
> WITH RULE 4:46-2 AND BRILL.
>
> A.  THE TRIAL COURT ERRED IN HOLDING A TRIAL
> ON THE PAPERS AND NOT APPLYING THE STANDARD
> FOR SUMMARY JUDGMENT UNDER RULE 4:46-2 AND
> BRILL.
>
> B.  HAD THE TRIAL COURT PROPERLY ADJUDICATED
> THE MOTIONS FOR SUMMARY JUDGMENT UNDER BRILL
> AND  RULE  4:46-2,  IT  COULD  NOT  HAVE
> DETERMINED THAT A REASONABLE FACT FINDER
> COULD NOT HAVE FOUND IN APPELLANT'S FAVOR.
>
> POINT II.
> THE TRIAL COURT'S FINDINGS OF FACT WERE
> THEMSELVES ERRONEOUS.

A-4690-05T5

This appeal arises from the grant of summary judgment to defendants. A moving party is entitled to summary judgment if there is no genuine issue as to any material fact in the record. R. 4:46-2. In deciding a summary judgment motion, we apply the standard articulated by the Supreme Court in Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995):

> [A] determination whether there exists a "genuine issue" of material fact that precludes summary judgment requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.

If no genuine issue of material fact exists, then this court must decide whether the trial court's ruling on the law was correct. Estate of Nicolas v. Ocean Plaza Condo Ass'n, Inc., 388 N.J. Super. 571 (App. Div. 2006). "[A] trial court's interpretation of the law and the consequences that flow from established facts are not entitled to any special deference." Manalapan Realty v. Manalapan Tp. Comm., 140 N.J. 366, 378 (1995).

Plaintiff contends that the trial judge erred in granting summary judgment because the judge conducted a trial on the papers, made findings of fact based solely on certifications and written submissions and without witnesses, credibility

9                                                         A-4690-05T5

determinations, or testimony. We disagree. During oral argument on the parties' cross-motions for summary judgment, plaintiff's counsel agreed with the court that there were no factual issues in dispute, that the resolution of the cross-motions required a legal interpretation of Judge Williams' orders, and that the motions were, therefore, ripe for decision.

> THE COURT: I mean there's going to be perhaps a legal issue, but there doesn't seem like any factual issues.
>
> [PLAINTIFF'S ATTORNEY:] No, Your Honor, there doesn't.

See Cummings v. Bahr, 295 N.J. Super. 374, 385 (App. Div. 1996) (the doctrine of judicial estoppel operates to bar a party to a legal proceeding from arguing a position inconsistent with one previously asserted).

We are satisfied that the court properly interpreted the orders of Judge Williams to determine whether defendants owed plaintiff any principal, interest, legal fees or costs associated with the mortgage foreclosure action. Because there was no factual issue in dispute, we must conduct a de novo review of defendants' motion for summary judgment to determine whether there were any amounts, including attorney's fees and costs owed to plaintiff that were not decided by Judge Williams' order of October 3, 2005.

The right to a counsel fee in an action for foreclosure of a mortgage is governed by Rule 4:42-9(a)(4). Rule 4:42-9(a)(4) provides:

> In an action for the foreclosure of a mortgage, the allowance shall be calculated as follows: on all sums adjudged to be paid . . . upon the excess over $10,000 at the rate of 1%, provided that the allowance shall not exceed $7,500. If, however, application of the formula prescribed by this rule results in a sum in excess of $7,500, the court may award an addition fee not greater than the amount of such excess on application supported by affidavit of services. In no case shall the fee allowance exceed the limitations of this rule.

[(emphasis added)].

It is well-settled that the limit in the calculation of attorney's fees in mortgage foreclosure actions contained in Rule 4:42-9(a)(4) is mandatory and the trial court has no discretion to depart from its strict application by increasing the attorney's fees awarded beyond the calculated amount. Stewart Title Guar. Co. v. Lewis, 347 N.J. Super. 127, 134-35 (Ch. Div. 2001); see 30A New Jersey Practice Law of Mortgages, § 31.30, at 75 (Pocket Part 2006).

Furthermore, "[w]ith respect to multiple sources allowing an attorney's fee, if a mortgage debt is secured by a note providing for an attorney's fee for collection and the mortgagee proceeds to foreclose the mortgage, his attorney's fees are

11                                                          A-4690-05T5

governed by this rule rather than by the note stipulation." Pressler, Current N.J. Court Rules, comment 2.4 on R. 4:42-9 (2007). Therefore, any attorney's fees associated with the foreclosure judgment were assessed within the foreclosure judgment and were limited by Rule 4:42-9. Those fees were clearly included in the Chancery Division's March 12, 2004 final judgment of foreclosure.

In the September 23, 2005 Chancery Division order, Judge Williams recognized the rule's limitation by limiting plaintiff's claim to any additional "attorney's fees and costs associated with this foreclosure action incurred after entering into the second forbearance agreement with defendants." Judge Williams in her oral decision, which was memorialized by the September 23, 2005 order, recited the parties' competing contentions and then determined that Rule 4:42-9 did not preclude the allowance of attorney's fees in connection with the forbearance agreement. The judge reasoned that the parties by their contractual agreement intended that plaintiff would be entitled to attorney's fees and costs arising out of the delays associated with the forbearance agreements. The judge limited, however, the attorney's fees recoverable to those associated with the second forbearance agreement. The judge concluded that she could not determine the correct amount of attorney's fees to

12                                                                    A-4690-05T5

award until a proper affidavit was provided as required by Rule

4:42-9(b). The judge stated:

> Plaintiff seeks $18,595.68 in attorney's
> fees and costs incurred as a result of
> Defendants' actions under the terms of the
> forbearance agreements. The letter written
> by Plaintiff's attorney and signed by
> Defendants detailing the second forbearance
> agreement reads in relevant part: "I have
> discussed this matter with my client and it
> is willing to extend the forbearance period
> until June 30, 2005 conditioned on monthly
> payment being made by Zahoor and Iffe Ahmed
> to it in the amount of $600.00 per month
> commencing on March 1, 2005 and continuing
> on the first day of the month through June
> 30, 2005. In the event the above property
> is sold, Amboy is to be paid in full from
> that sale."
>
> Clearly, Defendants had to realize that
> Plaintiffs were incurring substantial
> attorney's fees and costs as a result of
> their delay in selling or refinancing the
> property.
>
> Defendants claim that R. 4:42-9 limits the
> amount of attorney's fees Plaintiff is
> entitled to in this foreclosure action.
>
> . . . .
>
> However, R. 4:42-9 does not preclude the
> allowance of attorney's fees where the
> parties have agreed thereto in advance by
> contractual agreement.

Thereafter, plaintiff filed a certification in support of

attorney's fees from February 10, 2005, the date of the second

forbearance agreement, to September 28, 2005.

On October 3, 2005, the court entered its order fixing the amount due under the final judgment as of September 30, 2005 in the amount of $14,744.45.  That amount clearly included the amount of principal and interest that remained unpaid from the March 12, 2004 final judgment and included in addition the court's award of attorney's fees and costs in connection with the second forbearance agreement.

During argument on the cross-motions for summary judgment, the judge summed up the facts underlying the dispute.

> [S]omewhere there's an application by someone to determine by Judge Williams an exact [] amount due . . . . [Counsel] submits a certification on September 14, 2005 calling for a judgment of $10,614.89, attorney's fees of $17,491.25, and costs of $3,000, a total of $31,000.  Williams in response orders a payment of $14,744.45 as a final judgment of amount due.

We are satisfied that the attorney's fees sought by plaintiff in the newly filed Law Division action are the same fees that were the subject of the cross-motion by plaintiff to amend the amount due under the foreclosure judgment, which Judge Williams decided on September 23, 2005.  Judge Williams determined that plaintiff was entitled to attorney's fees "associated with this action after February 10, 2005." Plaintiff's counsel submitted a certification in support of attorney's fees and costs.  The judge entered an order fixing

the amount due at $14,744.45 on October 3, 2005. That order was
not appealed.

We are convinced that the doctrines of res judicata and
collateral estoppel bar plaintiff's Law Division action for the
same attorney's fees and costs sought by plaintiff in its cross-
motion in the mortgage foreclosure action but which were not
awarded by the court.

> "Res Judicata is an ancient judicial
> doctrine which contemplates that when a
> controversy between parties is once fairly
> litigated, and determined, it is no longer
> open to relitigation." Lubliner v. Bd. of
> Alcoholic Bev. Control, 33 N.J. 428, 435
> (1960). It is also well established that,
>
>> * * * a matter is not res judicata
>> unless there be identity of the
>> thing sued for, of the cause of
>> action, of the persons and
>> parties, of the quality of the
>> persons for and against whom the
>> claim is made, and the judgment in
>> the former suit be so on point as
>> to control the issue in the
>> pending action." [Templeton v.
>> Scudder, 16 N.J. Super. 576, 579
>> (App. Div. 1951).]
>
> [Franco v. Davis, 112 N.J. Super. 496, 498
> (Law Div. 1970).]

Collateral estoppel differs slightly from res judicata.

> The doctrine of res judicata "refers broadly
> to the common law doctrine barring
> relitigation of claims or issues that have
> already been adjudicated." Velasquez v.
> Franz, 123 N.J. 498, 505, 589 A.2d 143
> (1991) (citation omitted.) Likewise, "[t]he
> doctrine of collateral estoppel, or issue

> preclusion, 'bars relitigation of any issue
> [that] was actually determined in a prior
> action, generally between the same parties,
> involving a different claim or cause of
> action.'" Zirger v. General Accident Ins.
> Co., 144 N.J. 327, 337, 676 A.2d 1065 (1996)
> (quoting State v. Gonzalez, 75 N.J. 181,
> 186, 380 A.2d 1128 (1977)).

> [Aparin v. County of Gloucester, 345 N.J.
> Super. 41, 54 (Law Div.) aff'd o.b., 345
> N.J. Super. 24 (App. Div. 2000).]

Under the principles cited above, plaintiff's Law Division action is barred because the amount due under the foreclosure judgment, including all attorney's fees payable by defendants, was determined by the October 3, 2005 order. The parties involved in both actions are the same parties. The "identity of the thing sued for" is the same note and the same mortgage, given as security for the guaranty of the note, which were before Judge Williams. See Franco, supra, 112 N.J. Super. at 498. Both the Law Division action and the foreclosure action involved attorney's fees for legal services provided in connection with the February 10, 2005 forbearance agreement. Further, the "judgment in the former [action, i.e., the foreclosure action] . . . control[s] the issue in the pending action."

In its cross-motion before Judge Williams, plaintiff sought attorney's fees and costs totaling $18,595.68 and an amended judgment fixing the amount due on the judgment of foreclosure.

16                                          A-4690-05T5

Judge Williams entered an order amending final judgment fixing the amount due, including attorney's fees. The judgment recites that the final judgment in the amount of $14,744.45 "shall include the attorney's fees and costs incurred by [plaintiff] associated with this action after February 10, 2005."

We are convinced, as was Judge Mathesius, that the subject of the Law Division action was previously decided by the Chancery Division's October 3, 2005 order. Therefore, the Law Division cause of action and the Chancery Division order represent the same claim. See Templeton, supra, 16 N.J. Super. at 579. Accordingly, the April 12, 2006 Law Division order granting defendant's motion for summary judgment and dismissing plaintiff's complaint with prejudice is affirmed.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.
Paul M Clocker
CLERK OF THE APPELLATE DIVISION