NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Dorothy Rhue ALLEN, individually and as a class representative on behalf of others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>LASALLE BANK, N.A., CENLAR FEDERAL SAVINGS BANK FBS, FEIN, SUCH, KAHN and SHEPARD, P.C., John DOE SERVICERS 1-100, and John DOE LAW FIRMS 1-100<br><br>    Defendants. | Civ. No. 08-2240<br><br>OPINION |

THOMPSON, U.S.D.J.

  This matter has come before the Court on three Motions to Dismiss separately filed by Defendants LaSalle Bank, N.A. ("LaSalle") [docket # 52], Cenlar Federal Savings Bank FBS ("Cenlar") [60], and Fein, Such, Kahn & Shepard, P.C. ("FSKS") [57] (collectively, "Defendants"). Plaintiff Dorothy Rhue Allen ("Allen") opposes each of these motions [62–64]. The Court has reached a determination after considering the submissions of the parties and without oral arguments pursuant to Federal Rule of Civil Procedure 78(b). For the following reasons, LaSalle and Cenlar's motions will be granted in their entirety, and FSKS's motion will be granted in part and denied in part.

  I.  BACKGROUND

  This dispute arises out of a foreclosure action filed by the law firm FSKS, on behalf of LaSalle, against Allen in the New Jersey Superior Court, Gloucester County. After the filing of the foreclosure action and at the request of Allen's attorney, FSKS provided Allen's attorney

1

with a payoff quote regarding the amount remaining to be paid on the loan, along with other charges that were due. (Compl. ¶¶ 13–16). Plaintiff argues that the charges listed in this communication from FSKS were greater than the amount permitted under either the mortgage contract or by law. After bringing a counter-claim and third-party complaint in the foreclosure proceeding, LaSalle moved to voluntarily dismiss the state case. (*Id.* ¶¶ 10–11). Plaintiff's counter-claims and third-party claims were also dismissed without prejudice. (*Id.* ¶ 11).

Plaintiff then filed a Complaint [1] in this Court raising twelve different causes of action: (1) a claim under the Fair Debt Collections Practices Act (FDCPA), 15 U.S.C. § 1692f(1)[1] against FSKS; (2) a FDCPA § 1692f(1) claim against LaSalle; (3) a breach of contract claim against LaSalle and Cenlar; (4) a negligence claim against FSKS, LaSalle, and Cenlar; (5) a claim for the breach of the duty of good faith and fair dealing against FSKS, LaSalle, and Cenlar; (6) a claim for unjust enrichment against FSKS, LaSalle, and Cenlar; (7) a claim under the Federal Trade Commission Act, 15 U.S.C. § 45(a), against LaSalle and Cenlar; (8) a claim under the Fair Foreclosure Act against LaSalle and Cenlar; (9) a claim for the violation of New Jersey State Court Rules against LaSalle and Cenlar; (10) a claim under the New Jersey Consumer Fraud Act (NJCFA), N.J.S.A. 56:8-2, *et seq.*, against LaSalle and Cenlar; (11) a claim under New Jersey's Truth-In-Consumer Contracts, Warranty and Notice Act ("Truth Act"), N.J.S.A. 56:12-14, against LaSalle and Cenlar; and (12) a claim against numerous unnamed John Doe mortgage servicers and law firms. Plaintiff has now abandoned all of these claims except for counts one and two under the FDCPA, count ten under the NJCFA, and count eleven under the Truth Act. (Pl.'s Opp. Br. to Cenlar at 4) [63]. Accordingly, all other claims will be dismissed, and only these four remaining claims will be discussed by the Court.

---

[1] Plaintiff conceded on appeal that her FDCPA claims included only a cause of action arising under § 1692f(1). *See Allen v. LaSalle Bank*, 629 F.3d 364, 368 (3d Cir. 2011).

II.     LEGAL STANDARD

On a motion to dismiss for failure to state a claim, a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler*, 578 F.3d at 210–11. But, the court should disregard any conclusory allegations proffered in the complaint. *Id.* Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next determine whether the "facts alleged in the complaint are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). This requires more than a mere allegation of an entitlement to relief. *Id.* "A complaint has to 'show' such an entitlement with its facts." *Id.* A claim is only plausible if the facts pleaded allow a court reasonably to infer that the defendant is liable for the misconduct alleged. *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). Facts suggesting the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

III.    ANALYSIS

Only three types of claims remain in this case, all of which are statutorily based. These include claims arising under the NJCFA, the Truth Act, and the FDCPA. Each of these claims will be addressed in turn.

A.  *Ascertainable Loss and the NJCFA*

A claim brought under the NJCFA requires that a Plaintiff suffer an "ascertainable loss of moneys or property, real, or personal, as a result of the use of employment by another person of any method, act, or practice declared unlawful under this act." N.J.S.A. 56:8-19. "In cases involving . . . misrepresentation, either out-of-pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle." *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 792 (N.J. 2005). At the motion to dismiss stage, a private plaintiff must allege facts "from which a factfinder could [plausibly] find or infer that the plaintiff suffered an *actual* loss." *Id.* (emphasis added). In other words, this loss must not be "hypothetical or illusory." *Id.*

Defendants LaSalle and Cenlar both argue that because Plaintiff did not pay the amount claimed to be owed in the correspondence from FSKS to Allen's attorney, Allen has not suffered an ascertainable loss within the meaning of the NJCFA. In fact, LaSalle and Cenlar allege that Allen actually received a net benefit as a result of the dismissal of the foreclosure action with prejudice in the amount of $5,797.45. Plaintiff, on the other hand, argues that she has suffered damages in the amount of $7,713.46, which apparently represents attorney's fees and costs from defending against the state foreclosure action ($5,915) and the overcharges contained in the FSKS letters to Allen's attorney ($1,798.46). Neither of these alleged damages can serve as a basis for ascertainable loss under the NJCFA, and therefore Plaintiff's NJCFA claims must be dismissed.

In this case, Plaintiff never paid the alleged overcharges and, as such, these damages are only illusory. *See, e.g.*, *Barrows v. Chase Manhattan Mortg. Corp.*, 465 F. Supp. 2d 347, 360–61 (D.N.J. 2006) (dismissing NJCFA claim premised on underlying foreclosure action because Plaintiff paid no out-of-pocket costs in the underlying action such as opposing party's attorney's fees); *Skypala v. Mortg. Elec. Registration Sys., Inc.*, 655 F. Supp. 2d 451, 459 (D.N.J. 2009).

4

In addition, Plaintiff's attorney's fees paid to defend against the underlying foreclosure action cannot serve as a valid basis for establishing ascertainable loss under the NJCFA. In *Barrows*, for example, another court in this district rejected the argument that hiring an attorney to defend against improper charges in an underlying foreclosure action constituted an ascertainable loss because this conflicted with the "American Rule" of attorney's fees. *See id.* at 360 n.10. Moreover, the Complaint facially shows that Plaintiff has suffered no out-of-pocket damages in this regard because she paid her attorney only one-third of the money she saved by the dismissal of the foreclosure action, which was based on a contingency agreement with her attorney. *See* (Compl. ¶ 84). This cannot serve as a valid basis for establishing ascertainable loss because Plaintiff is indisputably better off—even after paying her contingency-based attorney's fees—because the total added value to her was two-thirds the amount of debt forgiven as a result of dismissal of the foreclosure action. In addition, a Plaintiff is not permitted to proceed on a NJCFA claim "solely on his claims for injunctive relief and attorney's fees." *Weinberg v. Sprint Corp.*, 801 A.2d 281, 293 (N.J. 2002). Although this case is somewhat unique in the sense that Plaintiff initially brought her claims as a counter-claim and third-party complaint in the separate underlying foreclosure action, the attorney's fees Plaintiff claims as an ascertainable loss cannot be separated from those that would normally be recoverable under N.J.S.A. 56:8-19. Recovery of these fees is not permissible without some other underlying ascertainable loss. *Weinberg*, 801 A.2d at 293. Therefore, Plaintiff has no ascertainable loss and the NJCFA claims against LaSalle and Cenlar must be dismissed.

    B. *Truth Act*

The Truth Act prohibits a "seller, lessor, creditor, lender or bailee" from offering or entering into "any written consumer contract or giv[ing] or display[ing] any written consumer warranty, notice or sign . . . which includes any provision that violates any clearly established

5

legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed." N.J.S.A. 56:12-15. Plaintiff alleges that the FSKS communication to Plaintiff's attorney was a "notice" that included illegal and excessive charges.

At least one other court in this district has stated in passing that a payoff statement may constitute a "notice" under the Truth Act. *See Rickenbach v. Wells Fargo Bank, N.A.*, 635 F. Supp. 2d 389, 400 (D.N.J. 2009). The *Rickenbach* court, however, did not fully analyze this issue, and this Court does not pass judgment as to whether the payoff statement at issue is a "notice," a term left undefined in the Truth Act. Even accepting that the payoff statement falls under the purview of the Truth Act, courts in this district have consistently held in cases such as this that the correct focus of the court should be upon the underlying debt instrument, not on the efforts to collect the debt. *See, e.g.*, *Chulsky v. Hudson Law Offices, P.C.*, 777 F. Supp. 2d 823, 849 (D.N.J. 2011); *Rivera v. Washington Mut. Bank*, 637 F. Supp. 2d 256, 268 n.22 (D.N.J. 2009); *Skypala*, 655 F. Supp. 2d at 459 n.20; *Perkins v. Washington Mut. FSB*, 655 F. Supp. 2d 463, 470 (D.N.J. 2009); *Martino v. Everhome Mortg.*, 639 F. Supp. 2d 484, 493 (D.N.J. 2009). Here, Plaintiff has not identified any provision in the mortgage contract that violates a clearly established legal right. Therefore, on this basis alone, Plaintiff's Truth Act claim must be dismissed.

Plaintiff's Truth Act claims must be dismissed for two additional reasons. First, pursuant to N.J.S.A. 56:12-15, the Truth Act explicitly states: "The provisions of this act shall not apply to residential leases or to the sale of real estate, whether improved or not . . . ." N.J.S.A. 56:12-15. Courts in this district have consistently avoided answering whether a mortgage agreement is barred from the protections of the Truth Act, instead relying on other grounds to dismiss Truth

6

Act claims involving a mortgage note.  Although the mortgage at issue is technically the loan agreement between the parties, as opposed to the actual contract for the sale of real estate, these two agreements are inextricably intertwined.  A "consumer" is defined under the Truth Act as "any individual who . . . borrows or bails any money . . . which is primarily for personal, family or household purposes."  *Id.*  A purchase mortgage, such as that at issue here, involves an individual who borrows money to consummate the sale of real estate.  Therefore, the Court believes that the mortgage agreement, and by consequence, efforts to collect on that mortgage agreement, both fall outside the protections of the Truth Act.

Further, at least one court in this district has held that because the Truth Act is a strict liability statute similar to the FDCPA, only the actual sender of a communication may be liable.  *See Barrows*, 465 F. Supp. 2d at 362.  An agency theory cannot be relied upon to impute a violation to the underlying mortgage holder.  *See id.*; *but see Rickenbach*, 635 F. Supp. 2d at 400 (reaching opposite conclusion).  The Court finds the *Barrows* reasoning persuasive.

Therefore, for all of these reasons, Plaintiff's Truth Act claims must be dismissed.

C.  *FDCPA*

Defendants LaSalle and FSKS additionally contend that Plaintiff's FDCPA claims must be dismissed.  LaSalle argues Allen has not sufficiently alleged that LaSalle is a "debt collector" as defined under the FDCPA and that it may not be held liable for any communications made by FSKS because FSKS was not acting on its behalf.  FSKS, on the other hand, argues that the letter it sent to Allen's attorney was not an "attempt" to collect a debt.

The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  Thus, a plaintiff must allege

7

facts indicating that a defendant (i) has a business whose principal purpose is the collection of debt or (ii) has a business that regularly collects or attempts to collect debts owed or allegedly owed to a third party.  LaSalle argues that it is not a "debt collector" because it was attempting to collect on a loan that it owned itself, not a loan owned by another.  As the United States Court of Appeals for the Third Circuit has explained, "[A]s to a specific debt, one cannot be both a 'creditor' and a 'debt collector,' as defined in the FDCPA, because those terms are mutually exclusive." *FTC v. Check Investors, Inc.*, 502 F.3d 159, 173 (3d Cir. 2007).  "[I]n determining if one is a 'creditor' or a 'debt collector,' courts have focused on the status of the debt at the time it was acquired." *Id.*  If the debt was in default at the time it was acquired, then a defendant may properly be characterized as a "debt collector"; if the debt was not in default, then a defendant is to be considered a "creditor." *Id.*

Here, Plaintiff alleges that LaSalle took assignment of the loan on or about June 12, 2007, which is after initiation of the foreclosure action and while the Plaintiff was in default.  (Compl. ¶¶11–12).  At the same time, however, Plaintiff alleges that LaSalle instituted the foreclosure action on May 7, 2007.  (Compl. ¶ 9).  Plaintiff's allegations in the Complaint are both confusing and contradictory.  *See Perkins*, 655 F. Supp. 2d at 465 (noting that the same two attorneys—who represent the Plaintiff in this matter as well—filed the complaints in *Rivera, Martino, Skypala,* and *Perkins* and that "the vast majority of the allegations in each case are identical" and that in each case the court was presented with a Complaint that was "hopelessly muddled, misstated, and mangled." (internal quotations omitted)); *see also Rivera*, 637 F. Supp. 2d at 258 (noting that Plaintiff's attorneys have drafted one form complaint for at least ten similar cases and that deciphering this complaint is "a herculean task").  Plaintiff apparently alleges both that LaSalle did not acquire the debt until after suit was filed and that LaSalle owned the debt prior to

8

institution of the suit—two facts that cannot be reconciled. Under either situation, however, Plaintiff's FDCPA claim against LaSalle must be dismissed.

If LaSalle was assigned the mortgage prior to initiation of the foreclosure action, there are not enough facts in the complaint making it plausible that LaSalle acquired the debt while it was in default. Thus, under this situation, Plaintiff has not validly pled that LaSalle is a "debt collector." If, on the other hand, LaSalle did not acquire the debt until June 12, 2007, as also alleged in the Amended Complaint, then this was after FSKS sent the payoff quote at issue, which was sent on June 7, 2007, *see* (Compl. ¶ 14). Under this situation, LaSalle could not be liable for the FSKS letter because there would have been no agency relationship between FSKS and LaSalle at the time that the payoff quote was sent. Allen argues that "if LaSalle was not the 'true' owner of the loan, then the actions taken by LaSalle become a greater violation of the [FDCPA] as LaSalle sought to foreclose and collect on a loan in which it has no admitted legal interest." (Pl.'s Opp. Br. to LaSalle at 12). Plaintiff, however, conceded on appeal that its FDCPA claims were limited to a violation of § 1692f(1). Therefore, under either of Allen's contradictory factual allegations, the FDCPA claim against LaSalle must be dismissed.

FSKS also argues that Plaintiff's FDCPA claim raised against it must be dismissed. FSKS contends that the payoff quote at issue was not an "attempt to collect a debt" within the meaning of § 1692f(1). The Court, however, cannot agree with FSKS's contentions because FSKS admitted in the payoff quote itself that the quote was an attempt to collect a debt.

The Court does have serious concerns about what has apparently occurred in this case and others like it. Plaintiff's attorneys seemingly have engaged in the same pattern: first, they represent a client in a foreclosure action; second, they request that the plaintiff's counsel in those foreclosure actions send them a notice of the amount owed on the foreclosed mortgage; and third, they then bring suit under the FDCPA, along with other claims, based on these payoff

quotes.  *See, e.g.*, *Rivera*, 637 F. Supp. 2d 256; *Martino*, 639 F. Supp. 2d 484; *Skypala*, 655 F. Supp. 2d 451; *Perkins*, 655 F. Supp. 2d 463.  As one judge in this district recently recognized, "The FDCPA was not passed in order to sprout a cottage industry for lawyers who self-interestedly battle over attorney's fees in federal court."  *Cohen v. Am. Credit Bureau*, No. 10-5512, 2012 U.S. Dist. LEXIS 33687, at *5 (D.N.J. Mar. 13, 2012) (citing *Lee v. Thomas & Thomas*, 109 F.3d 302, 306–07 (6th Cir. 1997)).  Just as "[c]ounsel should not reap financial rewards for prolonging litigation unnecessarily" in FDCPA cases, *Lee*, 109 F.3d at 306–07, so too should counsel not reap financial rewards by engineering a previously non-existent FDCPA violation through requesting a payoff quote—under the guise of settlement negotiations—for the purpose of suing on it.  This was not the intent of the FDCPA.

Although the Court is troubled by this case and others like it, the Court cannot accept FSKS's argument that its communication was not "an attempt to collect" a debt.  FSKS explicitly stated in its payoff quote to Allen's attorneys that "[t]his communication is an attempt to collect a debt." (Green Decl., Ex. C).  This admission on the face of that letter forecloses FSKS's argument.  Therefore, Allen's § 1692f(1) claim against FSKS will be allowed to proceed at this time.

IV.   CONCLUSION

For the reasons stated above, both LaSalle and Cenlar's Motions to Dismiss will be granted in their entirety.  FSKS's Motion to Dismiss will be granted in part and denied in part.  An appropriate Order will follow.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.

Date: May 23, 2012

10